## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

**JAMES D. LEE**                                                                              **PLAINTIFF**

**V.**                           **CASE NO.  5:08CV00170 BD**

**MICHAEL J.  ASTRUE,**
**Commissioner,**
**Social Security Administration**                                        **DEFENDANT**

### MEMORANDUM OPINION AND ORDER

Plaintiff James D. Lee has appealed the final decision of the Commissioner of the

Social Security Administration (the "Commissioner") denying him a period of disability

and disability insurance benefits under Title II, and denying his claim for Supplemental

Security Income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is reversed

and remanded for action consistent with the opinion in this case.

I.      **Procedural History:**

Plaintiff filed an application for disability and disability insurance benefits under

Title II on January 6, 2005.  On the same day, Plaintiff also filed an application for SSI

benefits.  In both applications, Plaintiff alleges he became disabled on September 17,

2004, as a result of cervical spondylosis, right shoulder and neck pain, depression, and

post traumatic stress disorder.

The ALJ held a hearing on August 29, 2006, and Plaintiff appeared with his non-attorney representative Willis White.  The ALJ received testimony from Plaintiff's wife, Brenda Lee, and vocational expert Mack Welch ("VE").  On February 14, 2007, the ALJ issued a decision denying Plaintiff benefits.  (Tr. 14-22)  After the administrative Appeals Council denied Plaintiff's request for review, Plaintiff filed the current Complaint for Review of Decision (docket entry #2) on June 9, 2008.

## II.   __Background__:

At the time of the hearing, Plaintiff was a 44-year-old male with a high school education.  He had past relevant work experience as a stocker, forklift driver, and maintenance worker.  Plaintiff was 6 feet tall and weighed 205 pounds.  He had one minor child.

Plaintiff served in the Army from 1998 until April 8, 2004.  Sometime in February of 2003, Plaintiff was involved in a motor vehicle accident.  As a result of the accident, Plaintiff suffered injuries to his neck and shoulder.  (Tr. 376) He was medically discharged from the Army on April 8, 2004, due to his injuries.  According to Plaintiff, he was discharged because he could no longer wear certain parts of his Army uniform without experiencing pain.  (Tr. 379)

Plaintiff began receiving disability benefits from the United States Department of Veterans Affairs ("VA") a few months after his medical discharge.  (Tr. 376)  At the time of the hearing, Plaintiff had a 60% disability rating from the VA.  (Tr. 377)  Two months

after the hearing, on October 28, 2006, the VA increased Plaintiff's disability rating.  (Tr. 367-371)

In addition to Plaintiff's physical impairments, he received disability from the VA for depression.  (Tr. 367-369)  Plaintiff attended group and individual counseling sessions and regularly took medication for depression and post traumatic stress disorder.

## III.   Findings of the ALJ:

The ALJ followed the required five-step sequential analysis set out in the social security regulations, 20 C.F.R. §§ 404.1520 and 416.920, finding: (1) that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability; (2) that he suffered from "severe impairments" as that term is interpreted for purposes of the Social Security Regulations; (3) that Plaintiff did not have an impairment, or combination of impairments, that rose to the level of severity for any impairment listed in Appendix 1 to Subpart P, Regulation No. 4; (4) that he was unable to perform any past relevant work; but (5) that Plaintiff retained the residual functional capacity ("RFC") to perform a significant range of sedentary work[1] on a sustained basis.  At step five, the ALJ found that a significant number of jobs existed in the economy which Plaintiff was capable of performing.

---

[1] "Sedentary work" is defined as work involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

3

Plaintiff contends that the findings of the ALJ are not supported by substantial evidence and contain errors of law based on the following: (1) the ALJ erred in failing to properly evaluate the medical evidence under 20 C.F.R. § 404.1527; and (2) the ALJ failed to properly evaluate Plaintiff's disability rating from the VA.

The Defendant argues that the ALJ's decision is supported by substantial evidence because: (1) the ALJ properly assessed Plaintiff's RFC with a VE's assistance; and (2) the ALJ was not bound by Plaintiff's VA disability rating.

IV.   **Legal Analysis:**

In reviewing the ALJ's decision, this Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g).  This review function is limited, and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it."  *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).  "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision." *Id.* Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome."  *Id.*  "Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]."  *Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).  Thus, the

4

Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).

## A.   Plaintiff's Residual Functional Capacity:

The ALJ bears the initial responsibility for assessing Plaintiff's RFC. *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Plaintiff's RFC is what he can do despite his limitations. 20 C.F.R. § 404.1545 (2001)(2003). In determining Plaintiff's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that Plaintiff can perform in a work setting, after giving appropriate consideration to all of his impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ must determine the Plaintiff's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and Plaintiff's own descriptions of his limitations. *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).

The ALJ determined that Plaintiff maintained the RFC to perform a significant range of sedentary work on a sustained basis. The ALJ determined that Plaintiff could physically lift and carry objects that weighed no more than 5 pounds occasionally, could stand and walk for no more than two hours in an 8-hour workday, could sit for no more than six hours in an 8-hour workday, could not climb or crawl, could occasionally

balance, stoop, crouch, and kneel, could reach, handle, and feel objects without significant limitation, could not reach overhead, could push and pull objects up to five pounds, could see, hear, and speak without significant impairment, and could not work around heights or moving machinery. (Tr. 17)

The record contains substantial evidence supporting the ALJ's physical RFC findings. The ALJ failed to discuss Plaintiff's medication usage in detail. It appears, however, that the ALJ properly took Plaintiff's medication use into account when the ALJ found Plaintiff could not work around heights or moving machinery.

Regarding Plaintiff's mental RFC, the ALJ determined that Plaintiff had severe impairments of depression and post traumatic stress disorder. (Tr. 16) Despite this finding, it appears the ALJ did not find any mental limitation in Plaintiff's RFC. (Tr. 17-20)

The record shows that Plaintiff consistently used medication and attended therapy for his depression and post traumatic stress disorder. It appears Plaintiff remained relatively stable despite his conditions. That is not to say his depression and post traumatic stress disorder were not limiting.

On March 21, 2005, Disability Determination Dr. Kathryn M. Gale conducted a Psychiatric Review Technique and determined that Plaintiff suffered from affective and anxiety-related disorders. (Tr. 216-229) Dr. Gale noted Plaintiff's depression and anxiety and found Plaintiff had recurrent and intrusive recollections of a traumatic

6

experiences which caused marked distress.  (Tr. 219-221)  Dr. Gale determined that these

disorders caused Plaintiff to suffer mild restriction in his daily activities, moderate

difficulties in maintaining social functioning, and moderate difficulties in maintaining

concentration, persistence, or pace.  (Tr. 226)

On March 21, 2005, Plaintiff also underwent a mental RFC Assessment by Dr.

Gale.  (Tr 235-238)  Dr. Gale found that Plaintiff had moderate limitations in his ability to

maintain attention and concentration for extended periods, to work in proximity to others

without being distracted by them, and to interact appropriately with the general public.

(Tr. 235-236)  Plaintiff also had moderate limitations in his ability to accept, understand,

remember, and carry out detailed instructions.  Ultimately, Dr. Gale determined that

Plaintiff was able to perform work where interpersonal contact is incidental to work

performed, *e.g.* assembly work; complexity of tasks is learned and performed by rote, few

variables, little judgment; and the supervision required is simple, direct, and concrete.

(Tr. 237)  On May 24, 2005, Disability Determination Dr. Brad Williams reviewed all the

evidence in the file and agreed with Dr. Gale's findings.  (Tr. 237)

As noted above, the ALJ found that Plaintiff had severe impairments of depression

and post traumatic stress disorder.  (Tr. 16)  A "severe" impairment is one that

significantly limits a plaintiff's physical or mental ability to do basic work activities.

*Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997); *Browning v. Sullivan*, 958 F.2d

817, 821 (8th Cir. 1992).  The ALJ specifically noted that these impairments caused

7

significant limitations in Plaintiff's ability to perform basic work activities.  (Tr. 16)  The ALJ, however, failed to account for these limitations in the RFC findings.

The ALJ evaluated Plaintiff's mental impairments and noted that Plaintiff did not have marked limitation in social functioning or ability to maintain concentration.  (Tr. 19)  The ALJ also found that Plaintiff's mental symptoms were adequately controlled with medication and psycho-social support.  (Tr. 20)  The ALJ then found that Plaintiff's symptoms would not "preclude the performance of light work, with the additional limitations previously described."  (Tr. 20)  This finding directly contradicts the ALJ's previous finding that Plaintiff was limited to a significant range of sedentary work.  (Tr. 17)  In addition to this contradiction, the "additional limitations previously described" failed to include any limitations from Plaintiff's depression or post traumatic stress disorder, even though the ALJ found these impairments "severe."  By definition, a severe impairment is significantly limiting.  (Tr. 17-20)  This was error.

Plaintiff met his burden of proving that his mental impairments limited his work-related abilities, and the ALJ erred in failing to account for these limitations.  Two separate Disability Determination doctors articulated work-related limitations caused by Plaintiff's mental impairments.  (Tr. 237)  The ALJ recognized these impairments as severe, but failed to account for them or address the Disability Determination doctors' opinions.

### B.   <u>Vocational Expert Hypothetical</u>:

When the ALJ determined that Plaintiff could not perform his past relevant work,

the burden shifted to the Commissioner to show that significant number of jobs existed in

the economy which Plaintiff was capable of performing.  See *Pate-Fires v. Astrue*, 564

F.3d 935, 942 (8th Cir. 2009) (burden shifts to Commissioner at step five of the

sequential analysis).  The Commissioner may meet this burden by seeking testimony from

a VE.  This testimony comes in response to a hypothetical question presented by the ALJ.

A hypothetical question posed to a VE is sufficient if it sets forth the impairments

supported by substantial evidence in the record and accepted as true by the ALJ.  *Hunt v.*

*Massanari*, 250 F.3d 622, 625 (8th Cir. 2001).  The hypothetical in this case failed to

account for impairments the ALJ found severe.  In addition, the hypothetical failed to set

forth limitations supported by substantial evidence.

During the administrative hearing, the ALJ presented the VE with a hypothetical

void of any mental impairment related limitations.  (Tr. 385-388)  Medical records show

that Plaintiff was diagnosed with mental limitations and was given a Global Assessment

of Functioning (GAF) score of 31 on several occasions.[2]  (Tr. 83, 112)  The ALJ appeared

to discount these findings due to Plaintiff's daily activities.  (Tr. 19)  Daily activities

---

[2] The Diagnostic and Statistical Manual of Mental Disorders (4th ed.) (DSM-IV),
published by the American Psychiatric Association, states that a GAF of 31 to 40
indicates some impairment in reality testing or communication or major impairment in
several areas, such as work or school, family relations, judgment, thinking, or mood.

alone are an insufficient basis to negate medical findings.  Two separate Disability

Determination Doctors concluded that Plaintiff was able to perform work where

interpersonal contact is incidental to work performed.  The ALJ did not include any social

interaction limitation in the hypothetical presented to the VE.  Without this limitation, the

VE found that Plaintiff could work as a cashier, a job that requires constant interaction

with the public.  Because the hypothetical was legally insufficient, the VE's testimony

regarding the jobs Plaintiff could perform was incomplete.  Accordingly, the

Commissioner has failed to meet his burden of showing that a significant number of jobs

 existed in the economy which Plaintiff was capable of performing.

On remand, the ALJ should account for Plaintiff's mental limitations, and, if

necessary, present a hypothetical that encompasses Plaintiff's mental limitations.

Through this hypothetical, the ALJ may determine if there are a significant number of

jobs in the economy which Plaintiff is capable of performing.

### V.    Conclusion:

After consideration of the record as a whole, the Court finds that the decision of

the Commissioner is not supported by substantial evidence and that the case should be

remanded.  Accordingly, the Commissioner's decision is reversed and remanded for

action consistent with this opinion.  This is a "sentence four" remand within the meaning

of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

10

IT IS SO ORDERED this 10th day of June, 2009.

_____
UNITED STATES MAGISTRATE JUDGE